UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KELLI L. ROGERS,<br><br>                          Plaintiff,<br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>                          Defendant. | CASE NO. 10cv5675-RBL-JRC<br><br>REPORT AND RECOMMENDATION<br><br>Noted for June 17, 2011 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. (<u>See</u> ECF Nos. 11, 13, 14.)

After considering and reviewing the record, the undersigned finds that the ALJ did not evaluate properly the opinions of examining psychologists and did not explain why his own interpretations, over those of the doctors, were correct. The ALJ also did not evaluate properly the opinion by non-examining medical source, Dr. Renee Eisenhauer, Ph.D. For these reasons, the undersigned recommends that this matter be reversed and remanded.

REPORT AND RECOMMENDATION - 1

BACKGROUND

Plaintiff was thirty-eight years old when her disability allegedly began on January 1, 2003 (Tr. 108). Plaintiff completed eleventh grade, but did not complete twelfth grade because she "got pregnant with [her] first daughter" (Tr. 8). Although plaintiff attempted to acquire her GED (General Educational Development), she was unsuccessful (id.).

Plaintiff has a sparse work history. She reports working only two months in 2003 washing dishes and cooking in a restaurant, one month in 2005 as a maintenance worker at WINCO grocer, and two months in 2005 as a sale person (Tr. 140, 141). She reports having to quit her last two jobs because of problems with her feet and legs. (Tr. 180, 210). She testified at her hearing that the longest job she's held was for just a few months (Tr. 9). Plaintiff testified further that she "had to get out of [one job] because there w[ere] issues with some of the people there" (id.). Another job she "just didn't go back [to]" because she "started feeling [] not wanted and really out of place . . . . [and] g[o]t a lot of anxiety" (Tr. 10).

PROCEDURAL HISTORY

On November 1, 2007, plaintiff protectively filed an application for Supplemental Security Income benefits (Tr. 54, 108-10). She alleged disability due to difficulty walking, as well as due to depression and bipolar disorder (Tr. 108, 124, 127). Her application was denied initially on January 3, 2008 (Tr. 64, 66-69), and was denied following reconsideration on April 18, 2008 (Tr. 65, 70-72). Plaintiff's requested hearing (see Tr. 73-75, 76-77) was held before Administrative Law Judge Kennedy (hereinafter "the ALJ") on September 18, 2009 (Tr. 1-42). On October 13, 2009, the ALJ issued a written decision, finding that plaintiff "has not been under a disability, as defined in the Social Security Act, since November 1, 2007, the date the application was filed" (Tr. 63 (citing 20 C.F.R. § 416.920(g))).

In November, 2009, plaintiff requested review to the Appeals Council (Tr. 48-50). The Appeals Council denied plaintiff's request for review on July 19, 2010 (Tr. 43-47), making the October 13, 2009 written decision by the ALJ the final decision subject to judicial review. See 20 C.F.R. § 404.981. On September 21, 2010, plaintiff filed a complaint seeking judicial review (see Complaint, ECF No. 1). In her opening brief, plaintiff contends that the ALJ erred in his evaluation of the medical evidence supplied by examining psychologists (see Plaintiff's Opening Brief, ECF No. 11, p. 1). She also contends that the ALJ erred in relying on the opinions of a non-examining source, Dr. Renee Eisenhauer, Ph.D. (see id.).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (*citing* Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th

REPORT AND RECOMMENDATION - 3

Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see Richardson v. Perales, 402 U.S. 389, 401 (1971).

In addition, "regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for h[is] decision and [the courts] confine our review to the reasons supplied by the ALJ." Steele v. Barnhart, 290 F.3d 936, 941(7th Cir. 2002) (*citing* SEC v. Chenery Corp., 318 U.S. 80, 93-95 (1943); Johnson v. Apfel, 189 F.3d 561, 564 (7th Cir. 1999); Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996)); see also Griemsmann v. Astrue, 147 Soc. Sec. Rep. Service 286, 2009 U.S. Dist. LEXIS 124952 at *8, (W.D. Wash. 2009) (J. Theiler) (*citing* Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003)), *adopted and remanded by* 147 Soc. Sec. Rep. Service 286, 2009 U.S. Dist. LEXIS 98985 (2009) (J. Zilly).

## DISCUSSION

1. <u>The ALJ failed to evaluate properly the medical evidence by examining psychologists</u>.

Plaintiff contends that the ALJ erred in his evaluation of the medical evidence supplied by examining psychologists Dr. Robert Schneider, Ph.D., Dr. Terrilee Wingate, Ph.D., Dr. Shawn Kenderdine, Ph.D., and Dr. Kristi Breen, Ph.D. (see Plaintiff's Opening Brief, ECF No. 11, p. 1).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). However, the ALJ must provide "clear

REPORT AND RECOMMENDATION - 4

and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)); see also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) ("the ALJ erred in failing to meet, either explicitly or implicitly, the standard of clear and convincing reasons required to reject an uncontradicted opinion of an examining psychologist") (*citing* Lester, supra, 81 F.3d at 830). Even if a treating or examining psychologist's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, supra, 81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d). A non-examining physician's opinion may not constitute substantial evidence by itself. Lester, supra, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan, supra, 242 F.3d at 1149 (*citing* Magallanes, supra, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, legitimate reasons that are supported by substantial evidence in the record." Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* Lester, supra, 81 F.3d at 831).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 725 (*citing* Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." Vincent

on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam).  The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

    a.   <u>The ALJ failed to evaluate properly the opinion by examining psychologist, Dr. Robert Schneider, Ph.D.</u>

Psychologist Dr. Robert Schneider, Ph.D. (hereinafter "Dr. Schneider") examined plaintiff on May 18, 2006 (Tr. 205-12). He indicated diagnoses of "major depressive d/o single episode [and] methamphetamine dependence in sustained remission" (Tr. 206). He indicated plaintiff's background included self-reported depression "for two years since her husband was killed in a motor vehicle accident" (Tr. 209). Dr. Schneider observed plaintiff "burst into tears when saying this" (id.). Dr. Schneider included plaintiff's self-reported background:

> [Plaintiff] and her husband were on vacation and her husband drove into town and swerved to miss a deer and drove off the road and his car flipped and he was thrown from the car and killed. They were married for ten years. She was prescribed Zoloft, and ran out of the medication and said she is very depressed again. She cries frequently, does not want to be around people[,] [and] 'has bad thoughts' such as feeling that she is done with life. She does not plan to kill herself but she thinks about it a lot.

(Id.).

Dr. Schneider noted plaintiff's subjective statements regarding being "able to cook, shop, . . . . maintain her laundry . . . . and drive[] with[out] [] difficulty" (Tr. 210). He also noted her subjective statement that "[s]he said she has been having more problems getting along with others so would have difficulty getting along with co-workers and supervisors" (id.).

Dr. Schneider objectively observed that plaintiff "was quite emotional and somewhat dramatic, particularly when talking about her ex-husband . . . . and became extremely distraught when talking about the accident" (Tr. 211). Dr. Schneider performed formal mental status tests (see id.). Plaintiff's objective results following testing were "mixed," including

correct performance of additions and subtractions, but also including impaired memory results and results that were "three standard deviations slower than average" (id.).

Dr. Schneider interpreted plaintiff's Minnesota Multiphasic Personality Inventory (MMPI-2) to include "a moderate degree of over reporting," as well as a "moderately high score on the exaggeration of impairment scale" (id.). Dr. Schneider also opined that plaintiff's "profile configuration is consistent with reported symptoms and indicates clinically significant depression with diminished psychological energy, fragile ego defenses, interpersonal anxiety, rumination, worry and tension" (Tr. 212). He further indicated that plaintiff's "profile indicates low stress tolerance and a tendency to be readily disorganized" (id.).

Dr. Schneider indicated his assessment that although plaintiff's "MMPI-2 indicates a moderate degree of exaggeration, [plaintiff] does appear to be emotionally fragile and easily disorganized" (Tr. 212). He further opined that plaintiff "does present as emotionally fragile and it is unlikely that she could tolerate typical stresses and demands of gainful employment" (id.). Dr. Schneider also specifically opined that plaintiff's objective test results "suggest[] that she would have difficulty with the pace and cognitive demands of gainful employment" (id.).

Regarding Dr. Schneider's opinion, the ALJ included the following in his written decision:

> With regard to concentration, persistence or pace, [plaintiff] has moderate difficulties. Mental status testing performed by DSHS psychologist Robert E. Schneider, Ph.D. indicated that [plaintiff] had difficulty with the Trails portion of the evaluation (internal citation to Ex. 2F/8, [Tr. 212]). Her performance on the Trails testing was slow and she scored within the impaired range, indicated that she would have difficulty with the pace and cognitive demands of employment (internal citation to Ex. 2F/8, [Tr. 212]). However, Renee Eisenhauer, Ph.D. reviewed the tests and noted [plaintiff]'s recall was 2/3, which is adequate (internal citation to Ex. 24F/3 [Tr. 356]). Dr. Eisenhauer also noted that [plaintiff]'s concentration for serial 3's was unimpaired, and her fund of knowledge was adequate (internal citation to Ex. 24F/3 [Tr. 256]).

(Tr. 58).

REPORT AND RECOMMENDATION - 7

First, the Court notes that although plaintiff's serial 3's were intact on subsequent evaluation on October 12, 2007, her test results on serial 7's were not intact (Tr. 264). Therefore, plaintiff's errors in serial 7's on subsequent testing support Dr. Schneider's opinion regarding plaintiff's limitations with respect to cognitive demands (see Tr. 211). In addition, Dr. Schneider indicated that plaintiff would have difficulty "with the pace *and* cognitive demands of employment" (see Tr. 212 (emphasis added)). Therefore, even if plaintiff's subsequent performance showed improvement sufficient to outweigh the cognitive limitations found in plaintiff's test results with Dr. Schneider, this objective finding regarding *cognitive* limitations (or a lack thereof) does not negate Dr. Schneider's opinion regarding *pace* limitations. The test results cited by the ALJ (i.e., recall, concentration, fund of knowledge) do not provide information regarding pace. From a review of the record, it appears that the opinion relied on by the ALJ regarding pace (Dr. Renee Eisenhauer's), in turn was made in reliance on an opinion by Dr. Kristi Breen, Ph.D. (hereinafter "Dr. Breen") (see Tr. 356, see also infra, sections 1.b, 2). Dr. Breen conducted a mental status examination on plaintiff, however Dr. Breen's examination does not appear to have tested plaintiff's limitations regarding pace (see Tr. 260-68). The ALJ appears to have rejected the opinion of Dr. Schneider regarding plaintiff's limitations regarding pace without any mention of any evidence regarding pace. This was legal error, as this opinion by examining psychologist Dr. Schneider "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." See Lester, supra, 81 F.3d at 830-31.

The ALJ provided further analysis of Dr. Schneider's opinion:

> A mental status examination performed by Robert E. Schneider, Ph. D, was significant, as [plaintiff's] MMPI-2 profile indicated a moderate degree of over reporting, and a moderately high score on the exaggeration of impairment scale with a T-score of 76, which Dr. Schneider noted was statistically significant, and a moderate elevation on the fake bad scale, which Dr. Schneider also noted

> as significant (internal citation to Ex. 2F/7, 8 [Tr. 211, 212]). Dr. Schneider also noted that [plaintiff] was 'somewhat dramatic.'
>
> . . . .
>
> As for the opinion evidence regarding [plaintiff]'s mental health complaints, [plaintiff] was examined by DSHS psychologist Robert E. Schneider, Ph.D., who opined that [plaintiff] had a Global Assessment of Functioning (GAF) score of 40 (internal citation to Ex. 2F/8 [Tr. 212]). A GAF score of 40 is not consistent with [plaintiff]'s stated activities of daily living, which she told Dr. Schneider included, cooking, shopping and laundry, and that she [] is able to drive without problems and pay bills and manage her money (internal citation to Ex. 2F/6 [Tr. 210]). Dr. Schneider noted that [plaintiff]'s MMPI-2 profile indicated a moderate degree of over reporting, and a moderately high score on the exaggeration of impairment scale with a T-score of 76, which Dr. Schneider noted was statistically significant, and a moderate elevation on the fake bad scale, which Dr. Schneider also noted as significant (internal citation to Ex. 2F/7, 8 [Tr. 211, 212]). Dr. Schneider's opinion that [platintiff] had a GAF score of 40 is not consistent with [plaintiff]'s stated activities of daily living, and [plaintiff]'s objective psychiatric examination results, and is therefore given less weight [than the non-examining medical sources, see Tr. 61-62].

(Tr. 60, 61).

The ALJ noted that Dr. Schneider's test results indicated that plaintiff potentially was exaggerating her impairment (see id.). As previously discussed, see supra, pp. 8-9, Dr. Schneider indicated his assessment that although plaintiff's "MMPI-2 indicates a moderate degree of exaggeration, [plaintiff] does appear to be emotionally fragile and easily disorganized" (Tr. 212). He further opined that plaintiff "does present as emotionally fragile and it is unlikely that she could tolerate typical stresses and demands of gainful employment" (id.).

The ALJ gave "less weight" to Dr. Schneider's opinion over the greater weight given to a non-examining medical source because he concluded that "Dr. Schnieder's opinion that [plaintiff] had a GAF score of 40 is not consistent with [plaintiff]'s stated activities of daily living, and [plaintiff]'s objective psychiatric examination results" (Tr. 61). According to the ALJ, plaintiff's activities of daily living, as told to Dr. Schneider included "cooking, shopping and

REPORT AND RECOMMENDATION - 9

laundry, and that she [] is able to drive without problems and pay bills and manage her money" (id.). It is unclear why these activities are inconsistent with a GAF score of 40 or with Dr. Schneider's opinions. See supra, p. 7.

According to the relevant Social Security Ruling, the decision of the ALJ should "include a discussion of why reported daily activity limitations or restrictions are or are not reasonably consistent with the medical and other evidence." Social Security Ruling (hereinafter "SSR") 95-5p 1995 SSR LEXIS 11. In addition, "if a claimant 'is able to spend a *substantial part* of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'" Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (*quoting* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)) (emphasis added in Vertigan).

First, regarding daily activities, the Court notes that the ALJ did not make a specific finding that plaintiff was "'able to spend a substantial part of her day engaged in pursuits involving the performance of physical [or mental] functions that are transferable to a work setting,'" and furthermore, the ALJ did not explain why plaintiff's reported daily activities are inconsistent with the GAF score of 40 assigned by Dr. Schneider. See Vertigan, supra, 260 F.3d at 1049. Thus, the ALJ's finding that Dr. Schneider's assignment of a GAF of 40 "is not consistent with [plaintiff]'s stated activities of daily living" does not provide substantial support for the ALJ's decision to give "less weight" to this opinion by Dr. Schneider. See id.; SSR 95-5p 1995 SSR LEXIS 11.

The Court also notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The mental status examination allows the organization,

completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993).

The mental status examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination'." Trzepacz, supra, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (id. at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996).

Here, Dr. Schneider, trained psychologist, opined that plaintiff's daily activities, which the ALJ noted that plaintiff told Dr. Schneider about, were consistent with a GAF of 40, when considered in combination with other information, including the objective results following his mental status examination. (See Tr. 61, 212). However, the ALJ concluded that this GAF was inconsistent with the same evidence reported to Dr. Schnieder. When an ALJ seeks to rely on his own interpretation of the evidence, over the interpretation of a trained doctor of psychology, he must explain why his interpretation is correct over that of the doctor. See Reddick, supra, 157 F.3d at 725. The ALJ did not do so adequately here.

The ALJ also gave "less weight" to Dr. Schneider's opinion that plaintiff's GAF was 40 because he concluded that a "GAF score of 40 is not consistent with . . . . [plaintiff]'s objective psychiatric examination results" (Tr. 61). However, based on a review of the relevant

REPORT AND RECOMMENDATION - 11

evidence, it is not clear that plaintiff's "objective psychiatric examination results" are not consistent with a GAF score of 40. To the contrary, the objective results obtained by Dr. Schneider when he conducted his mental status examination appear to be entirely consistent with a GAF of 40, see supra, 6-7. (See also Tr. 209-12). The ALJ does not indicate which "objective psychiatric examination results" are inconsistent with Dr. Schneider's assignment of a GAF of 40, nor why they are inconsistent with said assignment.

Based on a review of the relevant record, the Court concludes that the ALJ committed legal error by not giving "specific and legitimate reasons that are supported by substantial evidence in the record" to support his rejection of the opinion by Dr. Schneider regarding his assignment of plaintiff's GAF at 40, nor of his opinion regarding her difficulty with the pace and cognitive demands of employment. See Lester, supra, 81 F.3d at 830-31.

Furthermore, the ALJ does not mention Dr. Schneider's opinion that plaintiff "does present as emotionally fragile and it is unlikely that she could tolerate typical stresses and demands of gainful employment" (see Tr. 212). It was legal error for the ALJ to fail to explain why this "significant probative evidence" was rejected. See Vincent, supra, 739 F.2d at 1394-95. As noted previously, see supra, p. 10, Dr. Schneider knew of plaintiff's over reporting, yet nevertheless indicated that although plaintiff's "MMPI-2 indicates a moderate degree of exaggeration, [plaintiff] does appear to be emotionally fragile and easily disorganized" (Tr. 212). The ALJ did not explain why his interpretation is more correct than the one provided by Dr. Schneider. See Reddick, supra, 157 F.3d at 725.

Based on a review of the relevant record, and for the aforesaid reasons, the Court concludes that the ALJ did not evaluate properly the medical opinion by examining psychologist Dr. Schneider.

    b.  <u>The ALJ failed to evaluate properly the opinion by examining psychologists, Dr. Terrilee Wingate, Ph.D., Dr. Shawn Kenderdine, Ph.D. and Dr. Kristi Breen.</u>

Regarding the three opinions by examining psychologists, Dr. Terrilee Wingate, Ph.D., (hereinafter "Dr. Wingate"), Dr. Shawn Kenderdine, Ph.D. (hereinafter "Dr. Kenderdine") and Dr. Kristi Breen, Ph.D. (hereinafter "Dr. Breen"), the ALJ included the following in his written decision:

> [Plaintiff] was also examined by three psychologists for DSHS on three separate occasions. The three psychologists, Terilee Wingate, Phd, Shawn K. Kenderdine, Phd, and Kristi Breen, Phd, all opined that [plaintiff]'s global mental illness was at the marked level (Ex. 5F/2, 7F/2, 12F/2). These reports appear to be based on [] [plaintiff]'s reports that she is socially isolated, and are not consistent with [plaintiff]'s activities of daily living, and are also not consistent with the conservative mental health treatment [plaintiff] was receiving. For these reasons, these opinions are given less weight.

(Tr. 61).

First, the Court observes that the ALJ concludes that the reports of all three of these psychologists "are not consistent with [plaintiff]'s activities of daily living" (<u>see</u> Tr. 61). However, again, <u>see</u> <u>supra</u> section 1.a, the ALJ fails to specify why he reached these conclusions, much less specifying in particular which opinion in each individual report he finds to be inconsistent with said activities. <u>See</u> SSR 95-5p 1995 SSR LEXIS 11. This was improper. <u>See</u> <u>id.</u>; <u>see also</u> <u>Vertigan</u>, <u>supra</u>, 260 F.3d at 1049. The ALJ's reliance on his finding of an unspecified inconsistency between plaintiff's activities of daily living and the unspecified opinions of three different psychologists does not provide substantial support for the "less weight" given to the opinions by these three examining psychologists (<u>see</u> Tr. 61).

The ALJ also gave less weight to the opinions by these three examining psychologists because he concluded that their reports are "not consistent with the conservative mental health treatment [plaintiff] was receiving" (<u>see</u> <u>id.</u>). The Court notes that plaintiff testified that after her

REPORT AND RECOMMENDATION - 13

1   husband passed away, "that's when I got on Zoloft and they put me on Valium and they put me

2   on something else because I was such a wreck" (Tr. 20). She also testified that:

> Zoloft was pretty good. I stayed on it for three years, but, then my medical didn't pay for Zoloft anymore and they put me on some generic stuff which gives me terrible headaches, and I told that retarded doctor that it's not working that it's giving my headaches and she won't change it.

(Tr. 20). The record reflects that plaintiff was prescribed Celexa on January 11, 2008 (Tr. 338; see also Tr. 190). The record also indicates that her current medication list as of July 30, 2009 included Zoloft, among other medications (Tr. 367). The Court notes that the ALJ discussed plaintiff's prescribed counseling in his decision (see Tr. 60).

The ALJ does not specify why he determined that her mental health treatment was "conservative," nor does he specify how the opinions of these three examining psychologists are inconsistent with plaintiff's mental health treatment, nor which aspect of each one of these opinions in particular is inconsistent with her treatment. Therefore, based on these reasons, and based on a review of the relevant record, the Court concludes that ALJ's finding that the opinions by these three psychologists are "not consistent with the conservative mental health treatment [plaintiff] was receiving" does not provide much support for his decision to give "less" weight to all of the opinions of these three examining psychologists. (See Tr. 61).

In addition, regarding the ALJ's characterization of plaintiff's mental health treatment as conservative, the Court furthermore observes that[1], in another portion of the ALJ's decision, the ALJ discredited plaintiff's credibility, in part, because he found that "if [plaintiff]'s mental health symptoms were as significant as she alleges, it is likely she would have pursued more

---

[1] Although plaintiff did not challenge explicitly the ALJ's findings regarding plaintiff's testimony, the error by the ALJ in his review of plaintiff's testimony could not be missed by the Court during its review of the issue plaintiff raised regarding the ALJ's evaluation of the medical evidence supplied by examining psychologists (see Opening Brief, ECF No. 11).

REPORT AND RECOMMENDATION - 14

treatment, a prescription for name brand Zoloft or a prescription for another medication used to treat depression" (Tr. 60).

When a mental illness is involved, assuming that a failure to comply with prescribed treatment suggests a willful failure to comply with prescribed treatment can be illogical. This is in part because a person suffering from a mental illness may not realize that she needs her medication, or she may not even realize that her "condition reflects a potentially serious mental illness." Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)). "'[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" Id. (*quoting* with approval, Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).

When a person suffers from a mental illness, especially a combination of severe ones such as the severe depression, anxiety disorder and bipolar disorder suffered by plaintiff here, (see Tr. 56), and the mentally ill person does not have the requisite insight into his or her condition, or does not have the memory and focus, to have the ability to take a medication three times a day, this fact actually can indicate a greater severity of mental incapacity. See Van Nguyen, supra, 100 F.3d at 1465; see also Blankenship, supra, 874 F.2d at 1124. In addition, according to Social Security Ruling, (hereinafter "SSR"), SSR 96-7, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7 1996 SSR LEXIS 4, at \*21-\*22. The ALJ here did not mention in his decision that plaintiff testified that her insurance would not cover her prescription for Zoloft (see Tr. 20), thereby failing to consider appropriately

1  plaintiff's explanation before drawing any inferences about her "symptoms and their functional

2  effects." See SSR 96-7 1996 SSR LEXIS 4, at *21-*22.

3      Based on review of the relevant record, the Court concludes that the ALJ's reliance on his

4  conclusion that "if [plaintiff]'s mental health symptoms were as significant as she alleges, it is

5  likely she would have pursued more treatment" (Tr. 60) in assessing plaintiff's testimony was

6  legal error[2]. See Van Nguyen, supra, 100 F.3d at 1465; see also Blankenship, supra, 874 F.2d at

7  1124. Similarly, if the ALJ's characterization of plaintiff's mental health treatment as

8  "conservative" stems from any reliance on plaintiff's alleged failure to see medical treatment for

9  her mental illnesses, it likewise provides little support for the ALJ's decision to give "less"

10 weight to all of the opinions by these three examining psychologists. (See Tr. 61).

11     Finally, the ALJ also supports the "less weight" given to the opinions by these three

12 psychologists because he found that they "appear to be based [] [] [plaintiff]'s reports that she is

13 socially isolated" (see id.).

14     (1) Dr. Terrilee Wingate, Ph.D.

15     Dr. Terrilee Wingate, Ph.D. (hereinafter "Dr. Wingate") examined plaintiff on November

16 7, 2006 (see Tr. 228-35). From a review of her report, it appears that Dr. Wingate conducted a

17 mental status examination, as she made objective observations that plaintiff "did a 3 step task,

18 [completed] Serial 3's [with one error]: 17, 14, 11, 8, 5, 3, 0[,] [and] [completed] Serials 7's: 93,

19 86, 79, 72, 65" (Tr. 230 (error emphasized in original)). Dr. Wingate also objectively observed

20 that plaintiff "knew [the identity of the] pres[ident], V.P., [and] [knew] current events" (id.). Dr.

21 Wingate assessed plaintiff's understanding of what to do during a fire in a theater (i.e., "holler &

---

[2] The Court also observes that when assessing plaintiff's testimony, the ALJ also appears to have relied on plaintiff's activities of daily living without making a specific finding that she was able to spend a substantial part of her day engaged in activities transferable to a work setting, and without explaining why plaintiff's activities of daily living were inconsistent with her testimony (see Tr. 60). This also was legal error. See SSR 95-5p 1995 SSR LEXIS 11; Vertigan, supra, 260 F.3d at 1049.

REPORT AND RECOMMENDATION - 16

1  run"), as well as her understanding of proverbs (i.e., "judge a book 'don't be quick to judge

2  someone'") (id.). Dr. Wingate observed plaintiff's "casual[] dress[], OK grooming, dysphoric

3  mood, tearful[ness] [at] times, [as well as her ] full range of affect" (id.).

4      (2) Dr. Shawn Kenderdine, Ph.D.

5

6      Dr. Shawn Kenderdine, Ph.D. (hereinafter "Dr. Kenderdine") examined plaintiff on May

7  18, 2007 (Tr. 238-51). Dr. Kenderdine specified that the functional limitation ratings she

8  assigned to plaintiff were based on the "MSE [mental status examination], self report, [and]

9  behavioral observations" (Tr. 240). As indicated, Dr. Kenderdine conducted her own mental

10 status examination (see Tr. 242-47). Dr. Kenderdine observed plaintiff's "cooperative, pleasant,

11 [but] severe dysthymi[c]" demeanor, along with her "frequent tearfulness" (Tr. 242). Dr.

12 Kenderdine assessed memory and concentration with recall tasks, both immediate and delayed,

13

14 as well as with addition and subtraction serial 3's (Tr. 244). Dr. Kenderdine assessed plaintiff's

15 judgment, and found her insight to be "fair" (Tr. 245).

16     (3) Dr. Kristi Breen, Ph.D.

17     As already discussed, see section 1.a, pp. 8-9, Dr. Breen examined plaintiff on October

18 12, 2007 (see Tr. 260-71). Dr. Breen conducted a mental status examination (see Tr. 264, 266).

19 Dr. Breen observed plaintiff's guarded and irritable presentation, and noted plaintiff's "tearful,

20 dysphoric, [and] irritable" mood (Tr. 264). Dr. Breen tested plaintiff's ability to concentrate and

21

22 tested her memory, including recall testing and serial 3 additions, and serial 7 subtractions (id.).

23 As discussed previously, Plaintiff exhibited multiple errors in serial 7's (id.) Dr. Breen also

24 objectively observed that plaintiff demonstrated poor insight and that plaintiff was unable to

25 demonstrate an adequate ability regarding abstract thought (id.).

26

Based on the Court's review of the relevant record, as discussed above, the ALJ's conclusion that all of the opinions by Drs. Wingate, Kenderdine and Breen appear to be based on plaintiff's subjective reports that she is socially isolated is not a finding supported by substantial evidence in the record. For this reason, the Court finds that this conclusion by the ALJ provides little support for the ALJ's decision to give "less" weight to the opinions of Drs. Wingate, Kenderdine and Breen.

For all of the aforesaid reasons, the Court concludes that the ALJ did not provide "specific and legitimate reasons that are supported by substantial evidence in the record" to assign "less" weight to the opinions of examining psychologists Drs. Wingate, Kenderdine and Breen, and that the ALJ did not evaluate properly their opinions. See Lester, supra, 81 F.3d at 830-31.

2. The ALJ erred in relying on the opinion by non-examining medical source, Dr. Renee Eisenhauer, Ph.D., and by giving this opinion "greater" weight, compared with the "less" weight given to the opinions by examining psychologists, Drs. Schneider, Wingate, Kenderdine and Breen.

As already discussed in part, the ALJ gave "less" weight to all of the opinions by examining psychologists, Drs. Schneider, Wingate, Kenderdine and Breen, while he gave "greater" weight to non-examining medical source, Dr. Renee Eisenhauer, Ph.D., (hereinafter "Dr. Eisenhauer") (see Tr. 61-62). See supra sections 1.a, 1.b. Contrary to all of the examining psychologists, Dr. Eisenhauer did not conduct a mental status examination (see Tr. 354-57). The Court already has discussed the importance of the mental status examination during an evaluation of a person's mental illnesses, see supra section 1.a, as well as some of the findings by the examining psychologists when they conducted their mental status examinations, see supra 1.a, 1.b.

In addition, the Court already has discussed how the ALJ relied on Dr. Eisenhauer's opinion with respect to plaintiff's limitations regarding pace, even though Dr. Eisenhauer relied on an opinion by Dr. Breen, who did not test plaintiff's limitations regarding pace, see supra, section 1.a (see also Tr. 260-68, 356).

For these reasons, based on the relevant record, and because the ALJ did not evaluate properly the medical opinion evidence provided by Drs. Schneider, Wingate, Kenderdine and Breen, the Court concludes that the ALJ did not "set forth specific, legitimate reasons that are supported by substantial evidence in the record" for his decision to give "greater weight" (see Tr. 62) to the opinion of non-examining reviewer, Dr. Eisenhauer, while giving "less weight" to the opinions of examining psychologists Drs. Schneider, Wingate, Kenderdine and Breen. See Nguyen, supra, 100 F.3d at 1466.

## CONCLUSION

The ALJ did not evaluate properly the medical evidence, including the opinions of examining psychologists Drs. Schneider, Wingate, Kenderdine and Breen. Therefore, this matter should be reversed and remanded to the administration for further consideration.

Because the ALJ committed legal error in his evaluation of the medical evidence, and committed legal error in his evaluation of plaintiff's credibility, see supra, section 1.b, pp. 15 n.1, 16-17, 17 n.2, following remand of this matter, the ALJ should reevaluate anew the medical evidence and other evidence as a whole, and should begin his evaluation of this matter at step three of the sequential disability evaluation process.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo

review by the district judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on June 17, 2011, as noted in the caption.

Dated this 25th day of May, 2011.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20